IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

AT HUNTINGTON

RALPH D. PORTERFIELD,

    Plaintiff,

v.                                      CIVIL ACTION NO. 3:09-0232

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

**MEMORANDUM ORDER**

In this action, filed under the provisions of 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks review of the final decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income based on disability. The case is presently pending before the Court on cross-motions of the parties for judgment on the pleadings.

Plaintiff filed his applications on October 18, 2001, alleging disability commencing August 25, 2001 as a consequence of depression, alcoholism and mania. On appeal from initial and reconsidered denials, an administrative law judge, after hearing, found plaintiff not disabled in a decision which became the final decision of the Commissioner when the Appeals Council denied a request for review. Thereafter, plaintiff filed a civil action seeking review of the Commissioner's decision.[1] The Court, perceiving deficiencies in the record, remanded the case for further proceedings.

---

[1] See, Civil Action No. 3:04-0730.

While the first case was before the Appeals Council, plaintiff filed additional applications for disability insurance benefits and supplemental security income based on disability on September 19, 2003. Following the submission of additional evidence and a supplemental hearing, an administrative law judge again found plaintiff not disabled, and this decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. Plaintiff then filed this action seeking review of the Commissioner's decision.

At the time of the most recent administrative decision, plaintiff was thirty-two years of age and had obtained a high school education plus three years of college. His past relevant employment experience consisted of work as a cook, security guard, cashier and waiter. In his decision, the administrative law judge determined that plaintiff suffers from alcohol abuse and Bipolar Disorder, impairments he considered severe. Concluding that plaintiff had the residual functional capacity for a limited range of medium level work, and relying on Rule 202.20 of the Medical-Vocational Guidelines[2] and the testimony of a vocational expert, he found plaintiff not disabled.

One of the bases on which this case was remanded was the administrative law judge's evaluation of whether substance abuse was a "contributing factor material to the determination of disability."[3] The administrative law judge ultimately found that plaintiff's alcohol abuse was a contributing factor material to the determination of his disability; however his analysis did not comport with the requirements in the regulations.[4]

---

[2]20 C.F.R. Pt. 404, Subpart P, App. 2, Table No. 2.

[3]See 20 C.F.R. §§ 404.1535, 416.935.

[4]Id.

On remand a significant amount of new evidence was submitted, including additional reports from Dr. Stultz, the treating psychiatrist at the time of the earlier decision, and a therapist who worked with her. These reports show that, while plaintiff was apparently able to abstain from alcohol and work part-time from April 2003 to some date after June 23, by his next appointment on July 23, he had been arrested for DUI, and his father reported that a few nights before the arrest, plaintiff had come home "smelling like a brewery." His father also told the therapist that plaintiff had sanded various pieces of furniture in the house and stripped wallpaper in several rooms despite being told not to do these things. Plaintiff related he was not taking his anti-psychotic medication regularly and was smoking marijuana again. He displayed an inappropriate affect, giggling during the evaluation.[5] The therapist noted plaintiff "isn't showing the ability to function independently" and felt referral to the Prestera Center may be appropriate where he might be able to get into a program with increased supervision.

On October 6, 2003, Dr. Stultz and this therapist completed a "Routine Abstract Form" for the Disability Determination Section. This form reflects their opinion that plaintiff was "severely deficient" in judgment, insight and social functioning and also reflects their diagnosis of bipolar disorder, alcohol and rule out schizoaffective disorder. Their comments reflected that plaintiff had great difficulty handling stress; was "very impaired" socially and not likely to find acceptance in most work environments; was impulsive without consideration of consequences; did not complete projects; was easily influenced by others in negative ways; and was unable to be responsible with money.

---

[5] Consistent with this observation is plaintiff's father's report at this visit that plaintiff thought his drinking, DUI and allegations by a neighbor that he was a child molester were all "funny."

Reports from the Prestera Center reflect plaintiff was put into their partial hospitalization program ("PHP") in August 2003 by court order for treatment of depression and implusivity. He was drinking alcohol "almost daily" and smoking marijuana and had recently been arrested for public intoxication. At the time of the initial evaluation on August 11, 2003, the psychiatrist assessed plaintiff's Global Assessment of Functioning ("GAF") at 30, consistent with "serious" impairment in communication or judgment, or inability to function in almost all areas.[6] A psychiatric review on September 22, 2003 reflects plaintiff had been fired from a job earlier that month; his father was planning to file charges against him; he had pleaded guilty the week before to DUI; and had been using crack cocaine.

A "Comprehensive Diagnostic Psychiatric Evaluation," conducted at Prestera on February 6, 2004 reflects plaintiff stayed in the partial hospitalization program only one month and while there gave a history of being dependent on alcohol and of abusing marijuana and crack cocaine. He also displayed poor motivation for getting better. Plaintiff was living in a homeless shelter at this time, having been thrown out of his father's house for frequent stealing and even using his father's credit cards. He admitted selling his clothes and other items to buy drugs. Mental status exam was significant for irritable, depressed and angry mood and poor, impulsive judgment and insight. The psychiatrist diagnosed alcohol dependence, cannabis and cocaine abuse and bipolar disorder by history and assessed his GAF at 45, consistent with serious symptoms or serious impairment in social or occupational functioning.[7]

---

[6]See, Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, American Psychiatric Association, 1996 at 32.

[7]Id.

Plaintiff returned to Prestera on January 7, 2005 seeking a substance abuse evaluation at the suggestion of his case manager and probation officer. Plaintiff reported the longest he had held a job was for ten months and that his usual employment pattern was part-time work with irregular hours or just "day work." Plaintiff reported difficulties with his job performance "over the years" due to alcohol, stating his sometimes drank on the way to work and would come to work drunk on occasion. He admitted to using alcohol, cocaine, cannabis and hallucinogens on a "regular basis" but identified his primary problem as cocaine. He did relate having been abstinent from substances for two months and denied having any problems in the prior thirty days. He did not see a need for alcohol or drug treatment and reported his current medication managed his bipolar symptoms "well." The diagnosis was cocaine, alcohol and cannabis abuse.

The Commissioner sent plaintiff for consultative psychological evaluations in November 2003 and July 2006. At both times plaintiff was living at a homeless shelter. At the earlier evaluation he reported being in treatment with Prestera, although he had not taken his prescribed medication for two weeks, and also regular alcohol use. Mood was described as mildly depressed, and judgment was considered within normal limits, but this was based solely on plaintiff being asked a question about what he would do if he found a stamped, addressed letter on the sidewalk. The diagnosis was bipolar disorder and alcohol, cannabis and cocaine abuse. At the latter evaluation, insight was considered poor but judgment normal, though based only on a subtest score from the WAIS-III. The diagnosis was alcohol and cocaine dependence, dysthymic disorder and anxiety disorder NOS.

Similar to the earlier decision, the administrative law judge found only bipolar disorder and alcohol abuse to be severe impairments. Again, however, his conclusions with regard to the role

5

substance abuse plays in plaintiff's functional capacity are confusing. When considering the listings at step 3 of the sequential evaluation,[8] he concluded plaintiff's poly-substance abuse impairment does not have mental or physical consequences which would meet listing 12.09 relative to substance abuse disorders. He then found that "as a result," the poly-substance abuse is not a "material factor in the resolution of this claim." He also concluded, when evaluating plaintiff's credibility, that plaintiff remained capable of working and maintaining a job "when he takes his medications and is not abusing alcohol and drugs." There is a two-fold problem with this conclusion. First, as the administrative law judge acknowledges in the very next sentence, plaintiff's behavior seems to have a pattern that involves his taking medication and maybe even working for a period of time, but then he begins abusing drugs and alcohol, and the consequences, as noted, have ranged from job loss to incarceration. It is not clear whether this pattern is due to plaintiff's underlying bipolar disorder, his alcohol/drug abuse or both. Either way, the evidence has not established that plaintiff can work on a continuous basis.

Second, the administrative law judge finds in this decision, as noted, that, even considering alcohol and drug abuse, plaintiff can still perform employment; however, the second part of the above statement suggests that he could not work when abusing substances. This is further supported by the administrative law judge's discussion of plaintiff's ability to perform past work at step four. He finds that, "with the consideration of poly-substance abuse limitations," plaintiff could not return to his past work. Then, at step five he notes that the vocational expert testified that, considering plaintiff's residual functional capacity and the addition of "a severe limitation with attention, concentration and task persistence," plaintiff could not perform any work. The administrative law

---

[8]20 C.F.R. §§ 404.1520, 419.920.

judge then goes on to say "[h]owever, Section 105 of Public Law 104-121, prohibits eligibility for disability benefits ... if alcohol and/or drugs are a contributing factor material to the determination of disability." The administrative law judge ends by stating that, based on the psychological evaluation by Dr. Frederick, plaintiff's substance abuse "would not interfere with work."

      The administrative law judge's analysis in this decision is even more confusing and out of accord with the regulations implementing Public Law 104-121 than the prior decision, and it is not supported by the substantial evidence in the record. As the administrative law judge clearly states, the evidence establishes that plaintiff's substance abuse is ongoing, even if somewhat episodic, and definitely interferes significantly with his ability to perform mental functions to the point it seems apparent he would be unable to maintain employment. Whether he would still be disabled if consideration of his substance abuse were truly removed from the picture is unclear because it does not appear that any treating mental health professional familiar with his history has really considered which symptoms are related to an underlying bipolar disorder and which result from substance abuse. The Court thus finds that remand is again necessary for the Commissioner to try and make this determination; however, the opinions of mental health professionals who have not only treated plaintiff but also reviewed his mental health medical history should be sought and, if the administrative law judge deems it necessary, an opinion from a medical expert could be obtained. It seems crucial, however, that a source personally familiar with plaintiff's condition and history be consulted. The Commissioner should also keep in mind that "if this process proves indeterminate, an award of benefits must follow." Brueggermann v. Barnhart, 348 F.3d 689, 695 (8th Cir. 2003).

On the basis of the foregoing, it is **ORDERED** that this case be remanded to the Commissioner for further proceedings consistent with this Memorandum Order.

The Clerk is directed to transmit a copy of this Memorandum Order to all counsel of record.

ENTER: March 31, 2010

_____
MAURICE G. TAYLOR, JR.
UNITED STATES MAGISTRATE JUDGE